Sánchez Martínez, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
En un proceso por infracción al Art. 158 del Código Penal de Puerto Rico, 33 L.P.R.A. see. 4241, se le imputó al recurrente Onofre Cardona Mercado haber procreado un niño con la denunciante Jannette Flores Santiago, el menor Kevin Flores, a quien no había reconocido como hijo suyo ni le pagaba pensión alimentaria. El 22 de diciembre de 1992, el anterior Tribunal de Distrito, Sala de Yauco, ordenó el sobreseimiento de la causa tras el recurrente haber reconocido al menor en cuestión como hijo suyo y haber estipulado una pensión alimentaria de sesenta dólares ($60) mensuales, que comenzó a pagar. En ese momento el niño tenía seis mese¿ de edad. Una moción de reconsideración presentada oportunamente por el recurrente fue denegada de plano. Casi un año después, la madre del *1300 menor, a través de un Procurador de Relaciones de Familia, presentó una moción de aumento de pensión alimentaria. Incluyó específicamente la solicitud de que se le proveyera un plan médico al menor. En la vista del caso, declararon tanto la madre del referido menor como el recurrente. La madre declaró sobre las necesidades de alimentación y vestuario del menor y sobre los gastos médicos extraordinarios que era necesario sufragar. En particular, salió a relucir que el menor, entonces de año y nueve meses de edad, padecía de un lunar que crecía continuamente y requería atención de un cirujano. Como el menor no tenía plan médico, la madre solicitaba que se le ordenara al recurrente proveerle uno.
En la vista quedó, además, demostrado que la madre estaba desempleada y no recibía otros ingresos. El recurrente, por su parte, declaró que estaba empleado como gerente en un establecimiento comercial en Yauco y aceptó que había adquirido recientemente un automóvil nuevo. Afirmó que tenía otros dos hijos y que a la mayor de éstos le pasaba una pensión de sesenta dólares ($60) mensuales. Ante este cuadro, el tribunal a quó, mediante resolución de 26 de abril de 1994, aumentó la pensión alimentaria a veinticinco dólares ($25) semanales y le ordenó específicamente al recurrente que "so pena de desacato sea el menor incluido en un plan médico ".
Luego de un cumplimiento bastante irregular y defectuoso de su obligación alimentaria, el Procurador de Relaciones de Familia solicitó que se ordenara la detención indefinida del recurrente por los atrasos de éste en el pago de la pensión y por no haberle provisto al menor el plan médico que el tribunal había ordenado. El día señalado para la vista del desacato, el recurrente no compareció a pesar de haber sido citado personalmente. Su abogado informó que días antes de la vista, el recurrente se había ido para Estados Unidos y que él desconocía su dirección. A petición suya fue relevado de la representación legal del recurrente.
Con estos antecedentes, el tribunal a quo dictaminó que el recurrente tenía un atraso de $65.34 y ordenó su arresto hasta que éste se pusiera al día en el pago de la pensión y le proveyera al menor el referido plan médico. También expidió una orden de mostrar causa por su incomparecencia a la vista y lo declaró prófugo de la justicia. Se le fijaron fianzas montantes a $3,000 y $50,000 en cada uno de estos mandamientos judiciales.
Eventualmente, el recurrente regresó a Puerto Rico y el 30 de mayo de 1995, por medio de otro abogado, presentó una moción en la que solicitó que se le rebajara la pensión alimentaria. El 20 de junio de 1995, el recurrente solicitó que el caso fuera trasladado a la Sala Superior de Ponce ya que, según él, la Ley de Sustento de Menores, 8 L.P.R.A. see. 501 et seq. (Supl. 1995), requiere que todo incidente de fijación de pensiones alimentarias sea referido a un examinador especial. Ese mismo día el tribunal accedió al traslado, el cual sería efectivo "tan pronto se resuelva el desacato". La vista de desacato fue pautada para el 19 de julio de 1995.
Mientras tanto, el 30 de junio de 1995, el recurrente fue arrestado e ingresado a una institución penal por la falta de pago de la pensión alimentaria y por su incomparecencia al tribunal. Salió ese mismo día tras prestar las fianzas de $3,000 y $50,000 anteriormente fijadas y de pagar el atraso dictaminado de $65.34.
El 19 de julio, día de la vista del desacato, el recurrente reiteró su solicitud de traslado y el tribunal accedió. También dejó sin efecto la orden de mostrar causa por la incomparecencia a la vista del año anterior luego de ofrecer las debidas excusas. De los autos originales que tenemos ante nos surge que, en efecto, el caso fue trasladado a la Sala Superior de Ponce el 4 de agosto de 1995.
No obstante lo anterior, el 17 de agosto siguiente el caso fue devuelto a la Sala de Yauco a base de una Orden Interna de la Juez Administradora Interina, Hon. Leyda González Degró. En la orden de devolución se indica lo siguiente:

"Conforme el trámite establecido para el procesamiento de estos casos —del Art. 158 del Código Penal— la madre de los menores alimentistas debe ser orientada en el Tribunal de Distrito [Sub-sección de Distrito] para que radique en el Tribunal [sic, Sala] Superior de Ponce una petición nueva de alimentos. Al radicarse esa petición se transfiere la cuenta de pago de la pensión existente, continuándose los trámites para el pago de la misma en el caso nuevo. Mientras tanto, después de 
*1301
radicada esa petición el Tribunal de Distrito [sic] que corresponda podrá ordenar el cierre definitivo de su caso. No hay necesidad de trasladar el caso completo del Tribunal de Distrito [sic] al Tribunal Superior [sic], máxime cuando en el Tribunal Superior [sic] no se puede radicar el mismo como caso trasladado.

En vista de lo expuesto estamos ordenando la devolución de los casos a los que hemos hecho referencia al Tribunal de Distrito [sic] correspondiente para el trámite que corresponda, dependiendo si ya se radicó o no en el Tribunal Superior [sic] el nuevo caso con la nueva petición."

Devuelto el caso y estando nuevamente ante la consideración de la Sala de Yauco, el tribunal señaló y celebró una vista el 20 de septiembre de 1995 en la cual orientó a ambas partes para que presentaran una petición sobre fijación de pensión alimentaria ante la Sala Superior de Ponce tal y como la Orden Interna de la Juez Administradora había sugerido. También indicó que tan pronto se hiciera este trámite "se ordenará el archivo de este caso
Posteriormente, el 18 de octubre de 1995, comparecieron a la oficina del juez de la Sala de Yauco, el Procurador de Relaciones de Familia, el recurrente y su abogado. El Procurador aprovechó para presentarle una moción oral al tribunal relacionada con el caso de autos, donde le informó que el recurrente continuaba sin cumplir la parte de la orden de 26 de abril de 1994 que le requirió proveerle un plan médico al menor aquí recurrido. Informó, además, que el recurrente no le había notificado la moción de rebaja de pensión alimentaria. El tribunal a quo resolvió que el recurrente debía cumplir con la orden del 26 de abril de 1994 hasta tanto la Sala Superior de Ponce resolviera lo contrario. También señaló una vista para el 15 de noviembre de 1995 con el objeto de que el recurrente "traiga prueba del plan médico". El 14 de noviembre de 1995, es decir, el día antes de la vista señalada, el recurrente presentó este recurso. Y al día siguiente, a pesar de la oposición del Procurador, obtuvo la paralización de los procedimientos por este motivo. 
En su recurso el recurrente hace dos apuntamientos: (1) que el tribunal incidió en error al señalar para vista la moción de desacato por el incumplimiento de la obligación de proveerle un plan médico al menor habiéndose trasladado el caso previamente a la Sala Superior de Ponce y (2) al exigir el cumplimiento de la obligación de proveerle plan médico al menor sin antes considerar la solicitud de rebaja de pensión alimentaria y el relevo del aspecto relativo al plan médico.
El primer señalamiento de error es inmeritorio. Está basado en datos incorrectos que el recurrente ha omitido brindarnos en su recurso y que hemos tenido que averiguar por nuestra cuenta en los autos originales del caso. Según hemos indicado en la relación de los eventos procesales acaecidos en este caso, el expediente fue efectivamente trasladado a la Sala Superior de Ponce pero ésta lo devolvió con instmcciones de que se orientara a las partes para que presentaran una solicitud de fijación de pensión alimentaria ante dicha Sala, tras lo cual el caso de autos sería cerrado. El recurrente omitió brindamos este dato a pesar de que fue notificado de la devolución de los autos del caso a la Sala de Yauco. 
El tribunal a quo cumplió el mandato de orientar a las partes, según se desprende de la minuta del 20 de septiembre de 1995. En esa ocasión, como hemos dicho, el tribunal le indicó al recurrente que tan pronto se abriera un caso nuevo de alimentos en la Sala de Ponce, "se ordenará el archivo de este caso". Sin embargo el recurrente, en vez de tomar el atrecho más corto sugerido por la Juez Superior González Degró y presentar una solicitud de fijación de pensión alimentaria ante la Sala Superior de Ponce donde están adscritos los Examinadores de Pensiones Alimentarias, optó por tomar la ruta más larga presentando un recurso de certiorari que no tiene méritos.
Todo lo que el recurrente tiene que hacer es presentar la referida petición de fijación de pensión alimentaria ante la Sala Superior de Ponce. Una vez dé tan sencillo paso, el asunto será remitido a la consideración de un Examinador de Pensiones Alimentarias (que es por lo que clama el recurrente con tanta vehemencia) y se le fijará la pensión que corresponda siguiendo el procedimiento dispuesto en la Ley de Sustento de Menores, supra. Mientras el recurrente no lo haga, la Sala de Yauco tendrá la jurisdicción exclusiva sobre la cuestión de la pensión fijada en la resolución del 26 de abril de 1994, incluyendo el aspecto del plan médico. Por haber sido devuelto el caso de autos a la Sala de Yauco es que consideramos que el señalamiento de la vista del 15 de noviembre de 1995, era procedente en derecho. Cuando se señaló esa vista, ya la Sala de Yauco había re-adquirido su jurisdicción.
*1302 El recurrente plantea, como segundo error, que el tribunal a quo incidió en error al exigirle el cumplimiento de la obligación de proveerle un plan médico al menor sin antes considerar la solicitud de rebaja de pensión alimentaria y el relevo del aspecto relativo al plan médico. Lo que sucede con este planteamiento es que el recurrente pasa por alto que cuando se emitió la referida resolución de 26 de abril de 1994 ordenándole pagar un plan médico para el menor, él acató esa resolución. Es cierto que solicitó, a través de su anterior abogado, la reconsideración de la resolución, pero también es cierto que cuando la misma fue rechazada de plano, el recurrente no acudió en certiorari al entonces Tribunal Superior. 
Esperó justamente un año, cuando ya la resolución era firme, para solicitar una rebaja de la pensión y el relevo de la obligación de pagar el plan médico. Aunque las resoluciones fijando pensiones alimentarias de ordinario nunca llegan a ser cosa juzgada, Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246, 258 (1988), la realidad es que para justificar una rebaja o aumento de la pensión el promovente de la moción debe estar en posición de demostrar que las circunstancias del alimentante, del alimentista o de ambos, han variado y justifican la modificación solicitada, e.g., Guadalupe Viera v. Morell, 115 D.P.R. 4, 13-14 (1983).
Mas es norma arraigada de derecho que la rebaja de una pensión alimentaria no puede tener efecto retroactivo sino en las circunstancias y por los motivos especiales que tienen señalados la jurisprudencia y que han de ser alegadas y probadas cumplidamente. Valencia. Ex Parte, 116 D.P.R. 909, 914 (1986); Véase, además, Rivera Maldonado v. Cabrera Olivera,_D.P.R._(1992), 92 J.T.S. 29, a las págs. 9321-22. Aunque las razones aducidas por el recurrente para justificar una rebaja a su pensión no son nuevas sino que, por el contrario, fueron las mismas que presentó en la vista que dio lugar a la resolución del 26 de abril de 1994, en su Petición de Certiorari el recurrente aduce que fue despedido de su trabajo el pasado 14 de noviembre de 1995. Este asunto no ha sido llevado a la consideración del tribunal a quó ni creemos que le ha sido notificado a la parte recurrida.
De conformidad con lo anterior, el recurrente podrá enmendar su moción a los fines de especificar su nuevas circunstancias de manera que el asunto sea considerado y resuelto en debida forma por el tribunal recurrido. Por supuesto, la determinación que el tribunal a quo haga sobre la pensión que el recurrente deba pagar, requerirá necesariamente que el tribunal aplique las guías adoptadas a tenor con la Ley de Sustento de Menores, supra. Véase, en particular, el claro mandato al respecto en el segundo párrafo del Art. 19 de la ley, 8 L.P.R.A. see. 518 (Supl. 1995). Por lo demás, no advertimos en el expediente ninguna circunstancia que amerite intervenir con la decisión del Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Yauco, de hacer cumplir la resolución del 26 de abril de 1994 en lo relativo al plan médico. 
Con estos antecedentes, se deniega la expedición del auto solicitado sin perjuicio de que, celebrada la vista de desacato y de rebaja de pensión alimentaria en la Sala de Yauco, o simultáneamente, el recurrente pueda instar la correspondiente acción de fijación de pensión alimentaria en la Sala Superior de Ponce, tal y como se lo sugirieron en la vista del 20 de septiembre de 1995. Por tratarse de una cuestión tan fundamental como lo son los alimentos de menores, el tribunal recurrido podrá continuar los procedimientos en este caso sin tener que esperar a que esta resolución devenga final y firme. 
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 95 DTA 329
1. No surge de los autos cuáles fueron esas convincentes excusas presentadas por el recurrente ante el tribunal a quo para que éste procediera a dejar sin efecto la orden de mostrar causa expedida contra el recurrente, sobre todo al tomar en consideración que se trataba del recurrente haber burlado una citación legal del tribunal para que compareciera a la vista de desacato por la falta de pago de pensión alimentaria.
2. El recurrente dice en su recurso (Petición de Certiorari, a la pág. 3) que este incidente ocurrió mientras él *1303 comparecía al tribunal como parte promovida en el caso Rosa Sepúlveda Jorge v. Onofre Cardona, Núm. JHQU-91-0215 (aparentemente otro caso de pensión alimentaria respecto a otro menor distinto al alimentista del caso de autos). Por eso se explica que, aunque estaban presentes el recurrente y su abogado así como el Procurador de Relaciones de Familia, no estaba presente la madre del menor recurrido.
3. El recurrente argumentó que la mera presentación de su recurso de certiorari ante este Tribunal paralizó automáticamente los procedimientos ante la Sala de Yauco. No tiene razón. Eso ya ha sido resuelto en la negativa en casos anteriores. Véase, e.g, el voto particular del Juez German J. Brau Ramírez en el caso Pueblo v. Vélez Cardona, KLCE-95-0060, de 17 de marzo de 1995. De hecho, la nueva legislación que se ha aprobado en los cuerpos legislativos para enmendar ciertas disposiciones de la Ley de la Judicatura de 1994, Ley de 28 de julio de 1994, 4 L.P.R.A. sec._, aclara la situación acogiendo nuestra previa interpretación. Véase el P. de la C. 1701, texto de aprobación final de la Cámara de 24 de octubre de 1995, el cual aguarda por la firma del señor Gobernador de Puerto Rico.
4. Así se desprende de la carta de trámite de 17 de agosto de 1995 preparada por la señora Carmen A. Torres, Secretaria General de la Sala de Ponce, mediante la cual devolvía los autos originales a la Sala de Yauco.
5. Para esa fecha se había eliminado el Tribunal de Apelaciones y aun no se había establecido el actual Tribunal de Circuito de Apelaciones. Las resoluciones del entonces Tribunal de Distrito eran revisables por el Tribunal Superior. Véanse, Sec. 19 de la Ley de la Judicatura de 1952,4 L.P.R.A. see. 122, y Art. 670 del C. Enj. Civil de 1933, 32 L.P.R.A. see. 3491.
6. En el citado caso de Valencia, Ex Parte el Tribunal Supremo se expresó sobre un asunto muy similar al que es objeto de este recurso en los-siguientes términos:
"A nuestro juicio nada impide que, como regla general, los tribunales de instancia entiendan en una moción de rebaja de pensión alimenticia, aun cuando el peticionario en ese momento no esté al día en el pago de las mismas. Son dos cuestiones completamente separadas y distintas. Por un lado, y respecto a la suma de dinero no pagada, en ausencia de una explicación satisfactoria respecto a la causa para el incumplimiento, los tribunales de instancia podrán hacer uso de todo su poder coercitivo con el fin de lograr que los hijos reciban la pensión alimenticia en controversia que en determinado momento ese tribunal en particular entendió procedente; curso de acción con el cual, repetimos, no intervendremos a menos que se nos demuestre que es resultado del abuso de discreción. Ortiz Rivera v. Agostini, 92 D.P.R. 187 (1965); Vivas et al. v. Hernaíz, Targa & Co. et al., 24 D.P.R. 836 (1917)."
Por otro lado, no vemos razón legal alguna para que el tribunal --independientemente de su determinación respecto a las pensiones atrasadas— no entre a resolver si, a la luz de la "nueva prueba" que respecto a dicho asunto le presente un peticionario, debe o no reducir la pensión hasta ese momento vigente. De nada sirve que se siga acumulando mes tras mes una pensión alimenticia por una suma determinada que en realidad un peticionario, debido a cambios en sus circunstancias personales y de trabajo, no puede seguir satisfaciendo. Una negativa de esta naturaleza irremediablemente llevará al tribunal a una situación insoluble; y ese nunca puede ser él propósito o fin que un tribunal de justicia debe perseguir."
116 D.P.R., 2 la pág. 913.
7. No hemos pasado por alto el reclamo del recurrente en el sentido de que el tribunal a quo no aplicó las guías al fijar la pensión en $25 semanales en su resolución del 26 de abril de 1994. Pero como dijimos, aun cuando el tribunal se hubiese equivocado al no aplicarlas cosa que no es necesario resolver ahora, la realidad es que dicha resolución es firme desde hace más de un año. En ausencia de indicios de nulidad radical en tal dictamen, el recurrente no puede atacar colateralmente dicha resolución en un procedimiento de rebaja de pensión alimentaria.
8. Admitimos, sin embargo, que nos ha llamado poderosamente la atención el hecho de que no surge de la minuta de la vista del 16 de marzo de 1995 que hubiese desfilado prueba concerniente a si el recurrente tenía *1304 para ese entonces un plan médico para él y su familia, bien fuera sufragado por él o por su patrono. Si a la devolución de este caso no se demostrare que el recurrente tenía un plan médico en el cual hubiera podido incluir al menor, entonces la orden de proveerle uno era improcedente. El tribunal a quó si recibió prueba de los gastos médicos extraordinarios en que estaba incurriendo la madre del menor alimentista por razón del lunar creciente que éste tenía ($15 de pediatra y $45 de medicinas) y el tribunal podía imponer el pago de ese gasto extraordinario en adición a la pensión regular. En este sentido, el tribunal podría sustituir la orden de la provisión del plan médico por el del pago equivalente de los gastos médicos. Por supuesto, no sabemos si las necesidades médicas del menor han variado desde entonces. El recurrente deberá tener la oportunidad en la vista que se celebre de presentar la prueba que tenga al respecto.
9. Lo que es evidente es, que el recurrente no puede aspirar a que el tribunal recurrido lo releve del costo del plan médico o de los gastos médicos extraordinarios realmente incurridos. El tribunal recurrido no tiene facultad para eso en virtud de lo resuelto en el citado caso de Valencia, Ex Parte:

"Resolvemos, en su consecuencia, que los tribunales de instancia deben de abstenerse de intervenir con el monto de las pensiones alimenticias devengadas con anterioridad a la fecha de radicación de las solicitudes de rebaja de pensión alimenticia, excepto en aquellas situaciones extraordinarias en que el alimentista pueda demostrar —en adición a la procedencia de la rebaja propiamente- que por razón de una enfermedad o accidente de índole incapacitante estuvo realmente imposibilitado de radicar a tiempo la moción de rebaja correspondiente."

116 D.P.R., a las págs. 916-17 (énfasis suplido).